**JOHN & SAL'S AUTOMOTIVE SERVICE, Incorporated, a New York corporation, Plaintiff,**

v.

**SINCLAIR REFINING COMPANY, a corporation domiciled in the State of Maine, Jones Beach State Parkway Authority and Long Island State Park Commission, Defendants.**

United States District Court
S. D. New York.
Sept. 16, 1958.

Robert L. Collins, and Harry J. Coman, New York City, for plaintiff.

Everett L. Dodrill, New York City, for defendant Sinclair Refining Co.

G. Frank Dougherty, New York City, G. Frank Dougherty and Vincent A. Gorman, New York City, of counsel, for defendants Jones Beach State Parkway Authority and Long Island State Park Commission.

PALMIERI, District Judge.

On March 24, 1955 plaintiff, a New York corporation, entered into a contract with Sinclair Refining Co., a Maine corporation, under which plaintiff was to provide emergency service for the repair and towing of automobiles along a portion of the highway on Long Island. Sinclair had been granted a license to provide such service by the Long Island State Park Commission[1] and the Jones Beach State Parkway Authority[2] and had been granted the right to enter into a sublicense for the performance of this service. The contract between plaintiff and Sinclair was entered into to effect

such a sublicense. The sublicense stated that it was "subject to the continuing approval of [the] * * * Commission and the * * * Authority * *;" and further provided that if the sublicensee's service was "unsatisfactory to the * * * Commission, the * * Authority or Sinclair, this license shall be subject to cancellation by Sinclair upon not less than twenty-four (24) hours written notice."

Attached to the complaint is a copy of a letter from Sinclair with a notation that it was received by the plaintiff "June 27–58 about 2:30 PM," terminating the agreement between Sinclair and the plaintiff as of midnight, June 29, 1958. The complaint alleges that Sinclair's termination of the license was "premature and unwarranted and unjustified;" that the license between the Commission, the Authority, and Sinclair provides that Sinclair shall terminate any sublicense after receipt of written notice from the Commission or the Authority that the sublicensee's services are unsatisfactory; that no such written notice was received by Sinclair; that the Commission and Authority, before giving any such notice to Sinclair, were under a legal obligation to afford plaintiff a hearing on the character of the service it was providing; and that no such hearing was accorded plaintiff.

Sinclair, the Commission, and the Authority have been named as defendants in this action, which seeks an injunction restraining Sinclair, and those acting in participation with it, from permitting anyone other than plaintiff to provide the emergency service, and from cancelling the sublicense. No relief is sought against the Authority or the Commission except to the extent that they might be

---

1. The Long Island State Park Commission is a "board of three commissioners" "in the division of parks in the conservation department." N. Y. Conservation Law, § 770.

2. The Jones Beach State Parkway Authority is "a body corporate and politic constituting a public benefit corporation," consisting "of the commissioners of the Long Island state park commission and their successors." N. Y. Public Authorities Law, § 152. "A 'public benefit corporation' is a corporation organized to construct or operate a public improvement wholly or partly within the state, the profits from which enure to the benefit of this or other states, or to the people thereof." N. Y. General Corporation Law, § 3, subd. 4.

deemed to be acting in participation with Sinclair. Plaintiff has moved, before another Judge of this Court, for a preliminary injunction. A temporary restraining order was granted; but after the argument of the motion for the preliminary injunction, the temporary restraining order was vacated and the preliminary injunction denied. In the conclusions of law filed with this decision, the Court found that "[p]laintiff has failed to show or establish facts or circumstances entitling plaintiff to a preliminary injunction in this action." An appeal from this decision is pending.

Defendants now move for an order dismissing the complaint on the ground that the Court is without jurisdiction over the subject matter. Fed.R.Civ.P. 12(b) (1), 28 U.S.C. The complaint alleges jurisdiction based on diversity of citizenship, 28 U.S.C. § 1332 (1952); and because the action "arises under the Constitution * * * of the United States." 28 U.S.C. § 1331 (1952).

■ I turn first to a consideration of whether jurisdiction exists under the latter cited statute. Plaintiff asserts that the actions of the Commission and the Authority violated the "due process" clause of U.S.Const. Amend. XIV. As may be seen from the above summary of the complaint, two allegedly unconstitutional actions may have been asserted against the State agencies. The first is their failure to provide Sinclair with written notice of their determination that plaintiff's service was unsatisfactory. Assuming (for the complaint does not allege it) that one of the agencies gave oral notice of such a deter-

mination to Sinclair, and passing the question of whether plaintiff may complain of such a breach of the contract between Sinclair and the State agencies, failure to comply with the terms of the contract would not amount to a deprivation of "due process." There is no constitutional requirement that such a determination be made in writing; and it is well established that a breach of contract by a state is not a violation of the Fourteenth Amendment and does not constitute a taking of property without due process of law. E. g., Manila Investment Co. v. Trammell, 1915, 239 U.S. 31, 36 S.Ct. 12, 60 L.Ed. 129.

■ Secondly, it may be inferred from the complaint that one or both of the State agencies notified Sinclair that plaintiff's service was unsatisfactory.[3] Plaintiff asserts that this notification should not have been given before the agencies had notified plaintiff of their contemplated action and afforded plaintiff a hearing on the issue of whether its service was satisfactory. Plaintiff contends that such notice and hearing are required by the "due process" clause of U.S.Const. Amend. XIV.[4]

■ Cited in support of this contention are a number of cases which establish the proposition that notice and hearing are required before a state agency may make what has been referred to as a "quasi-judicial" decision, an adjudication of the rights or liabilities of a person. Hecht v. Monaghan, 1954, 307 N.Y. 461, 121 N.E.2d 421 (revocation of license to drive a taxicab);[5] Dohany v. Rogers, 1930, 281 U.S. 362, 50 S.Ct. 299, 74 L.Ed. 904 (condemnation of proper-

---

3. The complaint contains no such allegation. Indeed, as noted, supra page 520 of 165 F.Supp., the complaint alleges that no *written* notice was received by Sinclair. Absent an allegation that the agencies, or one of them, notified (presumably, orally) Sinclair that plaintiff's service was unsatisfactory, it would appear that no cause of action has been stated against the State agencies. Defendants do not attack the complaint on that ground, and I assume, for the purpose of this motion, that such an allegation is contained in the complaint.

4. The State agencies claim that they are immune from suit in this Court under the doctrine of Hans v. State of Louisiana, 1890, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842. If the Fourteenth Amendment requires notice and hearing before the agencies may advise Sinclair that plaintiff's service is unsatisfactory, the agencies would not be immune to suit in this Court. Georgia R.R. & Banking Co. v. Redwine, 1952, 342 U.S. 299, 72 S.Ct. 321, 96 L.Ed. 335.

5. In an attempt to bring its case within the rule of the Hecht decision, plaintiff

ty); Durkin v. Hey, 1941, 376 Ill. 292, 33 N.E.2d 463 (order for production of evidence.)

■ These cases, and the general proposition for which they stand, have no application here. In notifying Sinclair that plaintiff's service was not satisfactory the agencies did not adjudicate that question.[6] They merely asserted their claim that the sublicense should be ended because of unsatisfactory service. This claim was in no sense a "quasi-judicial" determination of that point. Nor was any order entered purporting to affect the rights of the plaintiff under its contract with Sinclair. The vital distinction between the situation at bar and the cases in which notice and hearing are required is that the agencies were not here exercising any governmental function. It is the exercise of such a function that brings into play the "notice and hearing" requirement of the due process clause.[7] Put another way, the agencies here were only exercising the right which their contract with Sinclair gave them: to declare their belief that plaintiff's service was unsatisfactory and to request that its sublicense be cancelled. "When a state becomes a party to a contract * * * the same rules of law are applied to her as to private persons under like circumstances." Davis v. Gray, 1873, 16 Wall. 203, 232, 21 L.Ed. 447. If, therefore, the agencies' action was in any way wrongful, a question on which I express

no opinion, plaintiff's relief will lie under the State law of tort or contract, and not under the Federal Constitution. Accordingly, this Court has no jurisdiction under 28 U.S.C. § 1331 (1952).[8]

■ Nor is there diversity jurisdiction as between the plaintiff and the State agencies. It is unnecessary to determine whether these agencies are, on the one hand, arms or alter egos of the State, or, on the other hand, public corporations acting as the State's agents.[9] Compare Hopkins v. Clemson Agricultural College of South Carolina, 1911, 221 U.S. 636, 31 S.Ct. 654, 55 L.Ed. 890 (public corporation); with State Highway Commission of Wyoming v. Utah Construction Co., 1928, 278 U.S. 194, 49 S.Ct. 104, 73 L.Ed. 262 (alter ego of the State). If the agencies are alter egos of the State this suit is against the State which, it is well settled, is not a "citizen" for purposes of federal diversity jurisdiction. E.g., State Highway Commission of Wyoming v. Utah Construction Co., supra, 278 U.S. at pages 199–200, 49 S.Ct. 104, 73 L.Ed. 262. If the agencies are public corporations, they are citizens of the state which created them, namely New York. South Carolina Public Services Authority v. New York Casualty Co., D.C.E.D.S.C.1947, 74 F.Supp. 831, 839. There is, accordingly, no diversity, plaintiff being a New York corporation.[10]

■ If the State agencies were indispensable parties to this action, the

cites N. Y. Conservation Law, § 775, which authorizes the Commission to make rules and regulations, and to adopt ordinances. The Police Commissioner had parallel authority in the Hecht case. But in that case the Commissioner had made a quasi-judicial determination that Hecht had violated his regulations and the Commissioner had, accordingly, revoked Hecht's hack license. As I point out in the following paragraph in the text, the state agencies have made no such quasi-judicial determination here.

6. "A judicial inquiry investigates, declares, and *enforces* liabilities * * *." Prentis v. Atlantic Coast Line Co., 1908, 211 U.S. 210, 226, 29 S.Ct. 67, 69, 53 L.Ed. 150. (Emphasis added.)

7. "Where the exercise of a *statutory* pow-

er adversely affects property rights" notice and hearing are required. Hecht v. Monaghan, 1954, 307 N.Y. 461, 468, 121 N.E.2d 421, 424. (Emphasis added.)

8. The fact that the complaint does not allege unconstitutional acts on the part of the State agencies not only deprives the Court of jurisdiction under 28 U.S.C. § 1331 (1952); it also appears that the State agencies are then immune from suit in this Court. See note 4, supra.

9. It may be that the Commission is an alter ego of the State while the Authority is a public corporation which acts as the State's agent. See notes 1 and 2, supra.

10. Since I hold that this Court is without jurisdiction over the subject matter

complaint would have to be dismissed. Strawbridge v. Curtiss, 1806, 3 Cranch. 267, 2 L.Ed. 435. It is not possible to say, however, in the present posture of the case, that the agencies are indispensable parties. Cf. Northern Indiana R. R. Co. v. Michigan Central R. R. Co., 1853, 15 How. 233, 14 L.Ed. 674; Shields v. Barrow, 1855, 17 How. 130, 139, 15 L.Ed. 158. Indeed, as noted above, a cause of action can only be inferred against them from the complaint. There is no allegation that they ever notified Sinclair that plaintiff's service was unsatisfactory. From all that appears in the complaint, Sinclair's notice to plaintiff may not have in any way been induced or requested by the State agencies.

Accordingly, the motion that the complaint be dismissed is granted to the extent that it is dismissed as against the defendants Commission and Authority. Since there is diversity of citizenship as between plaintiff and Sinclair, the motion is in all other respects denied. Fed. R.Civ.P. 21; Horn v. Lockhart, 1873, 17 Wall. 570, 21 L.Ed. 657.

It is so ordered.

---

of this suit it is unnecessary for me to rule on plaintiff's claim that the State has consented to be sued in this Court. Plaintiff cites N. Y. Public Authorities Law, § 153, subd. 1 which provides that the Authority "shall have power 1. To sue and be sued." There is no comparable provision relating to the Commission. Plaintiff contends, however, that this provision applies to the Commission also, since the Authority's members are the same as those of the Commission. See note 2, supra. N. Y. Public Authorities Law, § 163–a, however, confers "exclusive jurisdiction" in the New York Court of Claims over all suits against the Authority (and, assuming plaintiff's argument to be correct, against the Commission) for its tortious acts, or for certain breaches of contract. Consent to be sued in its own courts, however, does not imply waiver of the State's immunity from suit in this Court. Murray v. Wilson Distilling Co., 1909, 213 U.S. 151, 172, 29 S.Ct. 458, 53 L.Ed. 742. Plaintiff further claims that § 163–a may not be applied in its case, since it was enacted after the date of its contract with Sinclair. To apply it would, in plaintiff's view, impair the obligation of its contract, in violation of U.S.Const. Art. I, § 10, cl. 1. In the first place, plaintiff's contract is with Sinclair and § 163–a has no effect upon that contract or plaintiff's remedies under it. But even if it did, and assuming that prior to its passage, the State had consented to suits against the Authority and Commission in this Court, the State may constitutionally revoke its consent. The State "may modify or change existing remedies, or prescribe new modes of procedure, without impairing the obligation of contracts, provided a substantial or efficacious remedy remains or is given, by means of which a party can enforce his rights under the contract." Oshkosh Waterworks Co. v. City of Oshkosh, 1903, 187 U.S. 437, 439, 23 S.Ct. 234, 47 L.Ed. 249. There is no showing that suit against the Authority and Commission in the New York Court of Claims would not be a "substantial or efficacious remedy" for any claim plaintiff may have against them.